IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. _____

| | |
|---|---|
| CLARISSA R. PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | **(Jury Trial Demanded)** |
| COMPASS GROUP USA, INC., ) | |
| ) | |
| Defendant. ) | |

Plaintiff, complaining of the Defendant, alleges and says:

## I. INTRODUCTION AND JURISDICTION

1. This is an action seeking damages as well as legal, equitable and declaratory relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq., as amended ("Title VII"). Plaintiff's claims arise from Defendant's violations under Title VII, including discrimination based on her sex.

2. Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1434, this suit being a proceeding seeking to enforce rights and remedies secured in Title VII. Jurisdiction is also conferred upon this court by §1331.

3. Jurisdiction of the court is invoked pursuant to 28 U.S.C. §§2201 and 2202, this being an action for declaratory judgment declaring illegal the acts of Defendant complained of herein, violating rights secured to Plaintiff by Title VII.

## II. PARTIES

4. Clarissa Phillips is an African-American female resident of Charlotte, Mecklenburg County, North Carolina.

5. Compass Group USA, Inc. is a company doing business in the State of North Carolina. Its business includes providing various services in the food service industry. It is an employer within the meaning of Title VII.

### III. FACTS

6. Plaintiff began work with Defendant on or about July 25, 2011 as an Accounts Payable Research Analyst. She was promoted to Buy Smart Lead in May of 2013 where she was responsible for training operators in her unit on purchasing protocols.

7. In August, 2016, Plaintiff was promoted to Senior Data Acquisition Analyst. Soon after she obtained that position, she worked as the Interim Manager for about nine months, beginning in August, 2016 until Jason Krumbine was selected as Senior Operations Manager of Term Set and Data Acquisitions.

8. When Plaintiff served as the Interim Manager, she reported to the Vice-President, Doug Hensler. During the time that she served as the Interim Manager, she performed her regular duties.

9. When Jason Krumbine assumed his position, Plaintiff was responsible for his orientation to the work that she and the other team members were doing. That included providing him with process documents for all of the procedures that were written and providing clarification on how the processes worked.

10. Plaintiff began to experience problems with Krumbine during the transition period. In a meeting with other employees, Plaintiff was explaining a process. She was abruptly interrupted and told to stop talking. Krumbine dismissed her input despite the fact that other employees in the group advised Krumbine that Plaintiff was providing him accurate information.

2

This was the beginning of a show of disrespectful and demeaning behavior. Plaintiff continued to experience similar behavior that she noticed was not directed towards her male counterparts.

11. In a meeting with Krumbine in May of 2017, he abruptly said "You and I are not going to see eye to eye." In an arrogant tone and condescending demeanor, he advised her that "I am just going to escalate this to HR." Plaintiff asked why he was going to escalate it to HR. Plaintiff was offended and upset by the tone and demeanor in which she had been addressed. She went to HR and complained. Alicia McMath was the HR Manager to whom Plaintiff expressed her concerns. She was told by McMath that HR had received numerous complaints about Krumbine but that employees would not pursue actions against him. She was told to document her concerns.

12. Krumbine's treatment of Plaintiff and other women was discriminatory. Some of the ways in which he treated women differently is that he would walk through the Data Acquisition team on which there were no men in order to get to the Term Set Team where all but two of the employees were men. He walked by the women and would not speak to them. He eagerly spoke to and interacted with the men who worked with him. He appeared to give more guidance and support to the men than he did to the women. He was often demeaning in his speech to women, even in the presence of others.

13. After Plaintiff complained about Defendant's behavior to the Human Resources Department, she attempted to find other work in the company. She tried on two occasions and was unsuccessful in both attempts. It is Plaintiff's belief that Krumbine had input into whether she was able to transfer.

14. Plaintiff was given her annual performance evaluation in early November, 2017. The evaluation did not accurately reflect her work performance for the year. She refused to sign

3

the evaluation and complained to HR about it. An HR representative, Jennifer Ball, met with Plaintiff and Krumbine to discuss the evaluation. Krumbine came to the meeting with altered documents and documents which he claimed were errors when in fact they were not errors. Krumbine refused to change his performance evaluation despite having presented inaccurate evidence as the basis for the decision to rate her as he did.

15. As a result of Krumbine's behavior, Plaintiff began to experience health issues, including insomnia and migraine headaches, and she sought treatment from her physician.

16. Plaintiff's physician took her out of work from November 8, 2017 through January 2, 2018. As a result, Plaintiff applied for FMLA leave which was granted. During the time that she was on FMLA leave, she applied for short term disability. It was approved and paid after she returned to work on January 18, 2018.

17. Once Plaintiff returned to work, she caught up the work that had not been done in her absence. She was contacted by HR about signing the November, 2017 performance evaluation. She advised that she would not sign it because it was not accurate.

18. Plaintiff sought to transfer to another position. Krumbine was aware of her application. He inquired of her the date and time of her interview. During her interview, he sent her repeated IM messages. Plaintiff was not successful in getting the job.

19. On March 9, 2018, Plaintiff had a one-on-one meeting with Mark Shafer, the new analyst, and Jason Krumbine. Krumbine came into the meeting with a proposed thirty day improvement plan which included an admonition for the one day that Plaintiff had been tardy. Plaintiff refused to sign the document as she was aware that other people on his team were late every day. To her knowledge, no action was taken against the men who were constantly tardy. Krumbine's response was to remark that it had been established back in the Fall about their

relationship and that he could not promise her the outcome on this. He told her that he would let the Vice-President and HR know that she had "disrespected his authority." When she asked how she had disrespected his authority, Krumbine told her "by refusing to sign the document." Plaintiff was upset, demeaned, embarrassed and humiliated by Krumbine's behavior. She went to HR to complain and was told by Jennifer Ball that she could leave for the rest of the day since Plaintiff was emotional and crying.

20. On the following Monday, March 12, 2018, Plaintiff submitted her letter of resignation, indicating that she felt she had been forced to resign because of the treatment she had received from Jason Krumbine. She advised that the stress from Jason Krumbine's behavior had affected her health in a significant way, requiring a leave of absence due to migraines and insomnia, all because of the hostile work environment. She resigned her position because she could not continue to work in that hostile work environment.

21. Plaintiff is aware of several other women who have experienced the same mistreatment, disrespect and demeaning behavior from Jason Krumbine. Upon information and belief, management and HR were aware of Krumbine's behavior but took no effective action to change his behavior. Male employees are not treated in the way women were treated.

22. Plaintiff's resignation was a constructive discharge. Plaintiff had no alternative but to resign because the actions of Defendant caused her so much stress and distress that her health was compromised.

### IV. CLAIMS FOR RELIEF

#### FIRST CAUSE OF ACTION – SEX DISCRIMINATION

23. Plaintiff hereby re-alleges Paragraphs 1 through 22 above.

24. Defendant allowed its manager, Jason Krumbine, to discriminate against the Plaintiff on the basis of sex by treating her differently than similarly situated men with respect to the terms and conditions of her employment, including performance evaluations, disciplinary action, demeaning and insulting behavior and threats of disciplinary action.

25. Defendant's actions violate Title VII of the Civil Rights Act of 1964. Jason Krumbine's behavior was severe and pervasive and was permitted to continue until such point as Plaintiff's health deteriorated, including stress, insomnia, migraine headaches, anxiety and depression. It is Plaintiff's information and belief that other female employees have been similarly treated and that Defendant, particularly its Human Resources Department, have been ineffective in correcting the behavior of Krumbine and protecting its female employees. Plaintiff is aware that a number of female employees who have reported to Krumbine have experienced similar behavior and that several of them have left the company, like Plaintiff, without having another job lined up despite the fact that their employment was critical to their family's economic wellbeing. Plaintiff is also aware that other women have experienced similar problems to that which she experienced and have had to seek transfers in order to remain employed by Defendant.

26. Plaintiff had no choice but to resign her position because the behavior exhibited by Krumbine created health issues for her.

27. Defendant's actions violate Title VII of the Civil Rights Act of 1964.

28. Defendant's actions have caused Plaintiff economic and non-economic harm, including stress, anxiety, depression, insomnia and migraine headaches. Plaintiff is entitled to compensatory damages and punitive damages for the actions caused by Defendant.

## V. JURY TRIAL DEMAND

29. Plaintiff hereby demands a trial by jury.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the discrimination alleged herein be remedied in full and that the court, after a jury trial:

a) Declare the actions complained of herein to be illegal;

b) Issue an injunction enjoining the Defendant, its agents, employees, successors, attorneys and those acting in concert or participation with the Defendant and at their direction from engaging in the unlawful practices set forth herein;

c) Award Plaintiff make whole relief and damages for the economic and non-economic losses she has suffered;

d) Award Plaintiff her costs and expenses in this action, including reasonable attorney's fees, costs and other litigation expenses; and

e) Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

This 11th day of June, 2018.

*/s/ Geraldine Sumter*
Geraldine Sumter
N. C. Bar No. 11107
Ferguson Chambers & Sumter, P.A.
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone: (704) 375-8461
Facsimile: (980) 938-4867
Email: gsumter@fergusonsumter.com

Attorney for Plaintiff